No. 24-1322

In the

# United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant,*

v.

**BERNARD L. CHERRY,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:23-CR-30112-SMY
The Honorable Staci M. Yandle, District Judge

# BRIEF FOR APPELLANT UNITED STATES

STEVEN D. WEINHOEFT
*United States Attorney*

AMANDA R. MCQUAID
THOMAS E. LEGGANS
*Assistant United States Attorney*
*Office of the United States Attorney*
*Nine Executive Drive*
*Fairview Heights, Illinois 62208*
*(618) 628-3700*

No. 24-1322

I<small>N THE</small>

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant,*

v.

**BERNARD L. CHERRY,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:23-CR-30112-SMY
The Honorable Staci M. Yandle, District Judge

# BRIEF FOR APPELLANT UNITED STATES

STEVEN D. WEINHOEFT
*United States Attorney*

AMANDA R. MCQUAID
THOMAS E. LEGGANS
*Assistant United States Attorney*
*Office of the United States Attorney*
*Nine Executive Drive*
*Fairview Heights, Illinois 62208*
*(618) 628-3700*

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ...................................................... 1

JURISDICTIONAL STATEMENT ................................................................................. 2

STATEMENT OF THE ISSUES .................................................................................... 3

STATEMENT OF THE CASE ........................................................................................ 4

SUMMARY OF ARGUMENT ....................................................................................... 8

ARGUMENTS .............................................................................................................. 10

I.     The District Court Erred when it Found 18 U.S.C. § 922(g)(1) Unconstitutional As Applied to Defendant when he Presented no Individualized Factual or   Historical Basis for As Applied Relief and the Court Conducted no Defendant- Specific Analysis. ........................................................................................................... 10

    A. Standard of Review ........................................................................................... 10

    B. The District Court's Facial Ruling Is No Longer Tenable after *Prince* ................... 11

    C. Defendant Failed to Preserve a Cognizable As-Applied Challenge ...................... 11

    D. The District Court Failed to Conduct any Analysis in Support of Its As-Applied Finding ........................................................................................................ 18

II.     Section 922(g)(1) is Constitutional As Applied to a Defendant with Four Prior Felony Firearms Convictions, and an Illinois Conviction for Aggravated   Robbery and Attempted Vehicular Hijacking. .................................................................. 21

    A. Standard of Review ........................................................................................... 21

    B. Legal Framework .............................................................................................. 21

    C. Section 922(g)(1) is Constitutional Even as Applied to Those Convicted of Nonviolent Felonies ............................................................................................ 24

CONCLUSION ............................................................................................................. 37

CERTIFICATE OF COMPLIANCE ........................................................................... 38

CERTIFICATE OF SERVICE ..................................................................................... 39

RULE 30(a) SHORT APPENDIX ............................................................................... 40

ATTORNEY'S CERTIFICATE PURSUANT TO CIRCUIT RULE 30(d) ............................ 41

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023) ................................................................ passim

*Barrett v. United States*, 423 U.S. 212 (1976) ........................................................... 27, 36

*Beauharnais v. People of State of Ill.*, 343 U.S. 250 (1952) ........................................... 32

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887 (7th Cir. 2020) ........................ 11

*City of Louisville v. Babb*, 75 F.2d 162 (7th Cir. 1935) ............................................. 12

*Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261 (1990) ..................................... 32

*Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983) .......................................... 27

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ................................................ 21, 32

*Folajtar v. Attorney Gen. of the United States*, 980 F.3d 897 (3d Cir. 2020) ....................... 28

*Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557 (7th Cir. 2008) ....................... 11

*Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019) ..................................................... 11

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ..................................................... 25, 28

*Lewis v. United States*, 445 U.S. 55 (1980) ......................................................... 36

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ......................... 4, 21, 22

*Range v. Attorney Gen. United States*, 124 F.4th 218 (3d Cir. 2024) ................................. 25

*State v. Huntly*, 25 N.C. 418 (1843) ................................................................ 27

*United States v. Agee*, No. 21 CR 350-1, 2023 WL 6443924 (N.D.Ill. Oct. 3, 2023) ................... 13

*United States v. Ball*, 22-CR-00449, 2023 WL8433981 (N.D. Ill. Dec. 5, 2023) ....................... 13

*United States v. Bean*, 537 U.S. 71 (2002) ....................................................... 33, 34

*United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991) ....................................... 15, 19

*United States v. Brown*, No. 22 CR 326-1, 2023 WL 8236918 (N.D.Ill. Nov. 28, 2023) ................. 13

*United States v. Brown*, No.22 CR 297, 2023 WL 8004290 (N.D. Ill. Nov. 17, 2023)............ 13

*United States v. Butler*, 777 F.3d 382 (7th Cir. 2015)...................................................... 15

*United States v. Cockerham*, 162 F.4th 500 (5th Cir. 2025) .......................................... 25

*United States v. Dridi*, 952 F.3d 893 (7th Cir. 2020) ............................................... 15, 16

*United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) ............................................ 24, 26

*United States v. Dubois*, 139 F.4th 887 (11th Cir. 2025) .......................................... 24, 25

*United States v. Gates*, No. 22 CR 397-1, 2023 WL 5748362 (N.D.Ill. Sept. 6, 2023) ............ 13

*United States v. Gay*, 98 F.4th 843 (7th Cir. 2024) .................................................... 36

*United States v. Gutierrez*, 2024 WL 4041321 (N.D. Ill. Sept. 4, 2024) .................................. 14

*United States v. Hall*, No. 22 CR 665, 2023 WL 8004291(N.D. Ill. Nov. 17, 2023) ............... 13

*United States v. Hembree*, 165 F.4th 909 (5th Cir. 2026) .......................................... 25

*United States v. Hope*, 2024 WL 4164755, at *1 (S.D.Ill. Sept. 12, 2024)……………….... 14

*United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024).................................................. 24

*United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024).......................................... 24, 26

*United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005)...................................... 16

*United States v. James*, No. 23 CR 345, 2024 WL 168119, at*2 (N.D. Ill. Jan. 16, 2024) ....... 13

*United States v. LeBlanc*, 24-30036, 2025 WL 2218881 (5th Cir. Aug. 5, 2025) ....................... 5

*United States v. Leblanc*, 707 F. Supp. 3d 617 (M.D. La. 2023) ................................. 5

*United States v. Mansfield*, 21 F.4th 946 (7th Cir. 2021) ........................................ 16

*United States v. Mason*, 974 F.2d 897 (7th Cir. 1992)................................................. 18

*United States v. McGhee*, 98 F.4th 816 (7th Cir. 2024) ............................................. 15

*United States v. Mitchell*, 160 F.4th 169 (5th Cir. 2025) ........................................... 25

*United States v. Page*, 123 F.4th 851 (7th Cir. 2024) ............................................. 19

*United States v. Prince*, 171 F.4th 1009 (7th Cir. 2026) ...................................................... 11, 23

*United States v. Rahimi*, 602 U.S. 680 (2024) ................................................................... 22, 27, 29

*United States v. Rose*, 24-1086, 2026 WL 1901567 (7th Cir. July 2, 2026) ............................ 12

*United States v. Sarraj*, 665 F.3d 916 (7th Cir. 2012) ................................................................ 10

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ................................................................ 25

*United States v. Viveros-Chavez*, 114 F.4th 618 (7th Cir. 2024) ................................................. 21

*United States v. Watson*, 171 F.4th 1012 (7th Cir. 2026) ................................................... passim

*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) ................................................... passim

*United States v. Williams*, 168 F.4th 1051 (7th Cir. 2026) ......................................................... 15

*United States v. Williams*, 877 F.2d 516 (7th Cir. 1989) ....................................................... 18, 19

*United States* v. *Hardy*, No. 23 CR 129, 2023 WL 6795591(N.D. Ill. Oct. 13, 2023) ....... 13, 15

*Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025) ..................................................................... 24

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) ......................................... 12

*Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495 (7th Cir. 2020) .............................. 15

*Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025) ............................................................................. 24


Statutes

18 U.S.C. § 922(g) ............................................................................................................................ 5

18 U.S.C. § 922(g)(1) ............................................................................................................. passim

18 U.S.C. § 925(c) ....................................................................................................... 9, 24, 32, 33

18 U.S.C. § 3231 ............................................................................................................................. 2

18 U.S.C. § 3731 ............................................................................................................................. 2

21 U.S.C. § 841(a) ......................................................................................................................... 27

28 U.S.C. § 41 ............................................................................................................ 2

28 U.S.C. § 1291 ....................................................................................................... 2


Rules

Fed. R. App. P. 4(b)(1)(A)(i) ................................................................................... 2

Fed. R. App. P. 32(a)(5).......................................................................................... 37

Fed. R. App. P. 32(a)(6).......................................................................................... 37

Fed. R. App. P. 32(a)(7)(B)(i)................................................................................. 37

Fed. R. App. P. 32(f).............................................................................................. 37


Regulations

91 Fed. Reg. 8532 (Feb. 18, 2026) ....................................................................... 33

90 Fed. Reg. 34394 (July 22, 2025) ...................................................................... 34

90 Fed. Reg. 17835 (Apr. 29, 2025) ..................................................................... 33

90 Fed. Reg. 13080 (Mar. 20, 2025) ..................................................................... 33


Other Authorities

U.S. Const. amend. II. ……………………………………………………….. ……21

2 *The Documentary History of the Ratification of the Constitution* 598 (Merrill Jensen ed., 1976) …………………………………………………………………………………………31

4 *Journals of the Continental Congress* 1774-1789, at 205 (Worthington Chauncey Ford ed., 1906) (Mar. 14, 1776) …………………………………………………………………...26

4 William Blackstone, *Commentaries on the Laws of England* 239 (1769)……………………..29

9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302-03 (1821)…………………………………………...30

1771 N.J. Laws 19-20……………………………………………………………………………31

Act of 1776, 7 *Records of the Colony of Rhode Island and Providence Plantations in New England* 567 (John Russell Bartlett ed., 1862) …………………………………………………..26

Act of 1777, ch. 6, § 9, 24 *The State Records of North Carolina* 89 (Walter Clark ed., 1905)…..26

Act of Apr. 20, ch. III (1745), 23 Acts of the North Carolina General Assembly 218, 219 (1805)……………………………………………………………………………………….31

Act of Apr. 30, 1790, ch. 9, § 14, 1 Stat. 112, 115……………………………………………….30

Act of Dec. 1775, *in The Public Records of the Colony of Connecticut From May, 1775 to June 1776, inclusive* 193 (Charles J. Hoadly ed., 1890) ………………………………………….31

Act of Dec. 24, 1771, 1771 N.H. Laws 565-66………………………………………………….30

Act of Feb. 7, 1788, ch. 20, 1788 N.Y. Laws 632……………………………………………….29

Act of Feb. 8, 1783, ch. 46, 1783 Del. Laws 773.................................................................. 30

Act of Feb. 20, 1792, § 17, 1 Stat. 232, 237…………………………………………………….30

Act of Mar. 5, 1737, No. 650, § 3, 1737 S.C. Laws 147…………………………………………29

Act of May 1, 1776, ch. 21, § 2, 5 *Acts and Resolves, Public and Private, of the Province of Massachusetts Bay* 480 (1886)…………………………………………………………...26

Act of May 1777, ch. 3, 9 *The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619,* at 282 (William Waller Hening ed., 1821)………………………………………………………………………………..26

Act of Oct. 9, 1652, Laws and Ordinances of New Netherlands 138 (1868)………………..31

Act of Sept. 20, 1777, ch. 40, § 20, *Acts of the General Assembly of the State of New-Jersey* 90 (1777)………………………………………………………………………………………26

Acts and Laws of The English Colony of Rhode Island and Providence-Plantations in New-England in America 33-34 (1767)…………………………………………………………29

Bureau of Justice Statistics, Recidivism of Prisoners Released in 24 States in 2008: A 10-Year Follow-Up Period (2008-2018), at 10 (Table 11), https://bjs.ojp.gov/BJS_PUB/rpr24s0810yfup0818/Web%20content/508%20compliant%20PDFs (last accessed July 20, 2026)…………………………………………………….28, 29

Edward Livingston, *A System of Penal Law for the United States of America* 19-20, 40, 79, 126 (1828)…………………………………………………………………………….32

Edward Livingston, *System of Penal Law, Prepared for the State of Louisiana* 26-27, 29, 49, 73, 138 (1824)…………………………………………………………………………..32

Resolution of Mar. 13, 1776, *in Journal of the Provincial Congress of South Carolina*, 1776, at 77 (1776)………………………………………………………………………….31

Resolutions of Sept. 1, 1775, *in 1 Journals of the Provincial Congress, Provincial Convention, Committee of Safety and Council of Safety of the State of New-York* 132 (1842)………………30

Resolves of Apr. 6, 1776, 8 *The Statutes at Large of Pennsylvania from 1682-1801*, at 559-561 (1902)…………………………………………………………………………..26

**STATEMENT REGARDING ORAL ARGUMENT**

The United States respectfully suggests that the issues presented in this appeal can be resolved on the record and that oral argument would not substantially benefit this Honorable Court.

**JURISDICTIONAL STATEMENT**

This is a direct appeal from the Memorandum and Order dismissing the indictment in this case entered by the United States District Court for the Southern District of Illinois on February 1, 2024.   R. 29; App. 1-10, *Memorandum and Order.*

On September 19, 2023, a Federal Grand Jury sitting in East St. Louis, Illinois, returned an indictment charging Defendant Appellee Bernard L. Cherry ("Defendant") with two counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). R. 1.   The Indictment included a firearm forfeiture allegation.   R. 1.   The district court possessed subject matter jurisdiction over the offense pursuant to 18 U.S.C. § 3231.

On December 29, 2023, Defendant filed a Motion to Dismiss Indictment.   R. 21; App. 11-15, *Motion to Dismiss Indictment*.   On February 1, 2024, the district court entered a Memorandum and Order granting Defendant's motion.   R.29; App. 1-10, *Memorandum and Order.*

On February 29, 2024, Appellant United States of America timely filed a notice of appeal. R. 31; *see also* Fed. R. App. P. 4(b)(1)(A)(i).   This court's jurisdiction over this appeal is founded upon 18 U.S.C. § 3731, 28 U.S.C. § 41 and 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES**

I.    Whether the district court erred when it found 18 U.S.C. § 922(g)(1) unconstitutional as applied to Defendant when he presented no individualized factual or historical basis for as applied relief and the court conducted no defendant-specific analysis.

II.    Whether § 922(g)(1) is constitutional as applied to a defendant with four prior felony firearms convictions, and an Illinois conviction for aggravated robbery and attempted vehicular hijacking.

**STATEMENT OF THE CASE**

In September 2023, a grand jury in the Southern District of Illinois charged Defendant Bernard L. Cherry with two counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). R. 1. The indictment also contained a forfeiture allegation. R. 1. The charges in the indictment relate to events alleged to have occurred on June 10, 2023 and June 21, 2023. R. 1.

On October 4, 2023, a magistrate judge entered an order of detention pending trial, finding clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. R. 12 at 2. Specifically, the magistrate judge found detention appropriate based on the strong weight of evidence against Defendant, Defendant's prior criminal history, his history of violence or use of weapons, and Defendant's prior violations of probation, parole, or supervised release. R. 12 at 2-3.

On December 29, 2023, Defendant moved to dismiss the indictment, asserting that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him based on the Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). R. 21; App. 11-15. Defendant's five-page motion did not develop an as-applied argument specific to Defendant's history and characteristics. R. 21 et seq. Instead, the extent of Defendant's as-applied argument consisted of a statement in the preamble stating he was seeking as applied relief, and similar statements in the headings to his arguments and conclusion sentences. R. 21, at 1-4.

Defendant acknowledged that he had prior felony convictions consisting of federal and state felon in possession of weapon charges and an aggravated robbery and attempted vehicular hijacking charge.   R. 21 at 4.   Nevertheless, Defendant summarily concluded that these prior felony convictions "would not constitute the type of 'historical tradition' that would automatically preclude him from possession [of] a weapon as guaranteed by the Second Amendment to the United States Constitution."   R. 21 at 4. Defendant cited to one district court decision from the Middle District of Louisiana, *United States v. Leblanc*, 707 F. Supp. 3d 617 (M.D. La. 2023) (holding 18 U.S.C. § 922(g) unconstitutional as applied to LeBlanc because the government did not meet its burden to "find and explicate the historical sources that support the constitutionality" of § 922(g)(1) as applied to LeBlanc), later reversed by *United States v. LeBlanc*, 24-30036, 2025 WL 2218881 (5th Cir. Aug. 5, 2025), at *3 (reversing based on precedent finding as-applied challenges under § 922(g)(1) foreclosed for theft-related felony convictions, including robbery and burglary).   Defendant did not, however, conduct any analysis explaining how his individual conduct and felony convictions should be evaluated in an as-applied challenge to § 922(g)(1). R. 21 at 4.   Defendant's then-developed arguments in his motion are more fairly characterized as a truncated facial constitutional challenge to § 922(g)(1) based on Defendant's general status as a convicted felon and *Bruen's* historical-analogue test.   R. 21 et seq.

The Government's response to Defendant's motion addressed both the facial and as-applied constitutional issues arising from Defendant's motion, even though Defendant

had not developed an individualized as-applied claim based on his conduct and prior felony convictions. R. 27 et. seq. The Government's response extensively addressed the facial challenge that Defendant substantively raised in the motion to dismiss. R. 27 at 5-35. The response also addressed (to the extent it was possible) the as-applied Constitutional challenge Defendant purported to raise. R. 27 at 35-37. The response noted that historical tradition supports disarming dangerous individuals, and that Defendant's predicate conduct and prior felony convictions demonstrate a level of dangerousness worthy of permanent deprivation of firearms. R. 27 at 36. The Government's response detailed that Defendant had previously been convicted of felony convictions for Aggravated Robbery and Attempted Vehicular Hijacking, and four convictions for possessing a firearm as a convicted felon. R. 27 at 4. The response also provided a detailed account of the underlying events that led to Defendant's arrest on the charges in the indictment, stating:

> On June 10, 2023, two separate 911 callers reported a car accident near an off-ramp from Interstate 255 near Cahokia Heights, Illinois. When officers responded to the accident scene, they observed Defendant passed out behind the driver's seat of the car. No one else was in the car. Officers saw an empty pint of Hennessy brand liquor in his right hand. When one of the officers went to remove the bottle from Defendant's hand, he saw a "black object" under Defendant's arm, determined to be a Glock 22, .40 caliber firearm with an extended magazine loaded with 22 rounds of ammunition.

> Less than two weeks later, the East St. Louis Police Department responded to a "shots fired" call where the victim stated the suspect was in a white SUV travelling toward State Street. Officers locate[d] a white SUV in the area and they activated their lights to attempt to stop the car. The white SUV accelerated and disregarded a stop sign before eventually stopping. Two people – one being Defendant – ran from the car after it stopped. An

6

officer stated that he saw Defendant "[aim] an assault rifle in the direction of [his] location which was to the rear of him as he ran on foot to the east." Defendant fell and "surrendered himself." When officers retraced the path of the foot chase, they located a black Smith & Wesson M&P 15.

At the time Defendant possessed these firearms in June 2023, Defendant was prohibited from possessing a firearm under 18 U.S.C. § 922(g)(1). More specifically, defendant's criminal record reflects felony convictions for Aggravated Robbery and Attempted Vehicular Hijacking and multiple convictions for possessing a firearm as a convicted felon.

R. 27 at 3-4.

The Government argued below that the facts of Defendant's underlying convictions supported a finding of dangerousness (even assuming that label is relevant to the § 922(g)(1) constitutionality analysis) as it reflects the risk Defendant poses to public safety, his disregard for the law, and society's inability to trust that he will use a weapon responsibly. R. 27, at 35. Defendant did not attempt to rebut the facts outlined in the Government's response regarding his prior convictions or the conclusions it drew from them.

On February 1, 2024, the district court entered a Memorandum and Order granting the Defendant's Motion. R. 29; App. 1-10. The court conducted an analysis of the facial validity of § 922(g)(1) without addressing the as-applied claim Defendant purported to raise or the as-applied response the Government actually provided. R. 29; App. 1-10 Nevertheless, the district court afforded Defendant as applied relief in this conclusory sentence:

In sum, Defendant Cherry is included in "the people" protected by the Second Amendment. Because none of the historical laws offered by the

7

Government impose a "comparable burden" on the Second Amendment right of convicted felons to keep and bear arms, the Court finds § 922(g)(1) unconstitutional, facially and as applied.

R. 29, at 10; App. 10.

## SUMMARY OF ARGUMENT

First, the district court erred when it reached Defendant's as-applied challenge to 18 U.S.C. § 922(g)(1). Defendant failed to develop any argument in support of his claim that § 922(g)(1) was unconstitutional as applied to him. Furthermore, the district court afforded him relief on this issue in a one sentence conclusory holding that engaged in no as-applied analysis. Instead, the district court should have concluded that Defendant waived his as-applied challenge to § 922(g). This Court should likewise find that Defendant waived his as-applied challenge.

Second, Section 922(g)(1) is constitutional as applied to Defendant's firearm possession. As this Court recently recognized, "two enduring traditions" support § 922(g)(1)'s constitutionality. *United States v. Watson*, 171 F.4th 1012, 1024 (7th Cir. 2026). First, consistent with the historical tradition, "the legislature may determine that classes of people are dangerous." *Id.* at 1022. Second, historical laws authorizing capital punishment for felony offenses provide "some historical support" for § 922(g)(1). *Id.* at 1023. If a legislature could impose "the greatest possible punishment," the death penalty, then "the legislature may instead impose disarmament, the lesser restriction." *Id.* (quotation omitted).

8

Although this Court in *Watson* upheld § 922(g)(1) only as applied to "dangerous felons" and did not decide "whether Congress may deem non-violent felons 'dangerous,'" *Watson*, 171 F.4th at 1024, the same historical traditions that *Watson* relied upon support the statute's application to felons like Defendant. Founding-era legislatures disarmed categories of people based on their *risk* of violence, even if they had not yet committed actual violence. Furthermore, those legislatures authorized serious penalties such as the death penalty and forfeiture of one's estate even for nonviolent offenses such as theft, forgery, and counterfeiting. Consistent with the historical tradition, Congress may disarm even nonviolent felons based on the increased danger they present if armed. Indeed, *Watson* itself had no difficulty determining that "drug dealers . . . are dangerous" even though drug trafficking does not necessarily require violence. *Watson*, 171 F.4th at 1024.

To the extent § 922(g)(1) might have unconstitutional applications in unusual cases, Congress has addressed those concerns through 18 U.S.C. § 925(c), which allows a person to apply to the Attorney General for relief from the federal firearm prohibition by showing he "will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." Although this provision lay dormant for many years due to an appropriations rider, the Attorney General recently revitalized the § 925(c) process, further undermining Defendant's contention that § 922(g)(1) violates the Second Amendment.

At the very least, § 922(g)(1) is constitutional as applied to Defendant given his offense conduct and criminal history. At the time of his firearm possession in this case, Defendant had several felony convictions, including one for Aggravated Robbery and Attempted Vehicular Hijacking, and four convictions for possession of a firearm as a convicted felon. R. 27 at 4. Despite those convictions, on June 10, 2023, Defendant was found passed out behind the driver's seat of a car with an empty liquor bottle in his hand and a Glock 22, .40 caliber firearm with an extended magazine loaded with 22 rounds of ammunition under his arm. R. 27 at 3. Less than two weeks later, Defendant was arrested following a police chase where an officer observed Defendant running away while aiming an assault rifle in their direction. R. 27 at 3-4. Once the chase ended officers located a black Smith & Wesson M&P 15. R. 27 at 3-4. Disarming Defendant is therefore consistent with the Second Amendment.

**ARGUMENTS**

I. **The District Court Erred when it Found 18 U.S.C. § 922(g)(1) Unconstitutional As Applied to Defendant when he Presented no Individualized Factual or Historical Basis for As Applied Relief and the Court Conducted no Defendant-Specific Analysis.**

   **A. Standard of Review**

This court reviews de novo "questions of law in a district court's ruling on a motion to dismiss an indictment." *United States v. Sarraj*, 665 F.3d 916, 920–21 (7th Cir. 2012). Legal questions "of whether a party's conduct amounts to waiver are reviewed *de novo*" while "[f]actual determinations on which a district court predicates a finding of

waiver are reviewed for clear error." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561–62 (7th Cir. 2008); *see also Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020).

### B. The District Court's Facial Ruling Is No Longer Tenable after *Prince*

The district court held that 18 U.S.C. § 922(g)(1) is unconstitutional both facially and as applied. The facial ruling is no longer tenable after this Court's decision in *United States v. Prince*, 171 F.4th 1009 (7th Cir. 2026). *Prince* holds that § 922(g)(1) is not facially unconstitutional because the statute indisputably has constitutional applications. *Id.* Whatever uncertainty may have existed after *Bruen*, *Prince* resolves any question regarding the facial constitutionality of § 922(g)(1) in this Circuit. Accordingly, this Court should summarily reverse the district court's order to the extent it declared § 922(g)(1) facially invalid.

### C. Defendant Failed to Preserve a Cognizable As-Applied Challenge

Defendant did not present, develop, or preserve an as-applied challenge to § 922(g) specific to Defendant's criminal history and characteristics. R. 21 et seq. Instead, Defendant's motion merely asserted, in conclusory fashion, that § 922(g)(1) was unconstitutional "as applied." Defendant, as the proponent of an as-applied constitutional challenge, bears the burden of showing that § 922(g)(1) is unconstitutional as applied to him. *See Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) ("[S]omeone who wants us to carve out particular felonies (or felons) from a category that the Supreme Court has said is presumptively valid must supply an adequate basis for that

11

distinction"). While *Hatfield* was a pre-*Bruen* decision, this court imposed a similar requirement in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), which is a post-*Bruen* decision. Likewise, this Court recently confirmed that "[s]omeone who wants to contest the validity of a federal statute has at least the burden of raising factual issues and bears the burden of production, if not the risk of non-persuasion." *United States v. Rose*, 24-1086, 2026 WL 1901567, at *4 (7th Cir. July 2, 2026) (*citing Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 319–20 (1985) (statutes are presumptively constitutional); *City of Louisville v. Babb*, 75 F.2d 162, 165 (7th Cir. 1935) (person contesting a statute's constitutionality bears the burden of proof)); *in accord United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024) ("in an as-applied challenge to § 922(g)(1), the burden rests on [Defendant] to show he's not dangerous").

Defendant's failure to adequately develop his as-applied claim is particularly inexcusable in this case because this Court had already established the proper analytical framework for his claims at the time he filed his motion. While this Court remanded in *Rose* without finding waiver, it recognized "that *Rahimi* and *Hemani* have clarified the appropriate analysis." *Rose*, 2026 WL 1901567 at *5. Here, Defendant did not need any clarification regarding the required analysis for his as-applied challenge to § 922(g)(1). Following *Bruen*, this Court provided litigants with a well-developed roadmap for presenting claims alleging that § 922(g) is unconstitutional as applied. *Atkinson*, 70 F.4th at 1022–1024. In *Atkinson*, this Court declined to take sides in a circuit split as to whether the law permits an as-applied challenge to § 922(g)(1) that would create a "carve-out" for

12

"non-violent" offenders. *Atkinson*, 70 F.4th at 1023–24. Instead, *Atkinson* requires a party making an as-applied challenge to explain: (1) the "historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes"; (2) how to "define a non-violent or a non-dangerous felony"; and (3) "what evidence … a court [can] consider in assessing whether a particular felony conviction was violent[.]" *Atkinson*, 70 F.4th at 1023–24. The Government specifically cited and discussed the *Atkinson* requirements in its response to Defendant's motion to dismiss below. R. 27 at 10-12, 30-35.

Here, Defendant addressed none of the *Atkinson* questions and made no effort to explain why he was entitled to a non-violent offender "carve-out" from the application of § 922(g)(1). Many district courts in this Circuit have faulted parties bringing as-applied challenges for failing to address the prerequisite questions outlined in *Atkinson*. *See e.g., United States v. Ball*, 22-CR-00449, 2023 WL 8433981 (N.D. Ill. Dec. 5, 2023); *United States v. Brown*, No. 22 CR 326-1, 2023 WL 8236918 (N.D. Ill. Nov. 28, 2023); *United States v. Hall*, No. 22 CR 665, 2023 WL 8004291 (N.D. Ill. Nov. 17, 2023); *United States* v. *Brown*, No. 22 CR 297, 2023 WL 8004290 (N.D. Ill. Nov. 17, 2023); *United States v. Hardy*, No. 23 CR 129, 2023 WL 6795591 (N.D. Ill. Oct. 13, 2023); *United States v. Agee*, No. 21 CR 350-1, 2023 WL 6443924 (N.D. Ill. Oct. 3, 2023); *United States v. Gates*, No. 22 CR 397-1, 2023 WL 5748362 (N.D. Ill. Sept. 6, 2023); *United States v. James*, No. 23 CR 345, 2024 WL 168119, at *2 (N.D. Ill. Jan. 16, 2024).

Moreover, *Atkinson* emphasized the need for a "proper, fulsome analysis" of the relevant historical tradition. An as-applied challenge necessarily requires consideration of the challenger's own circumstances. Without a developed factual and legal presentation from the defendant, there is no meaningful as-applied inquiry for a district court to perform. *See Williams*, 113 F.4th at 662 ("in an as-applied challenge to § 922(g)(1), the burden rests on Williams to show he's not dangerous"). *Atkinson* requires a party challenging the constitutionality of Section 922(g)(1) to develop a historical record that justified individual assessments. *Atkinson*, 70 F.4th at 1023; *see also United States v. Gutierrez*, 2024 WL 4041321, at *12 (N.D. Ill. Sept. 4, 2024) (applying *Atkinson* in the context of a criminal defendant's challenge to Section 922(g)(1)). Ultimately, in *Atkinson*, this Court found Atkinson's arguments undeveloped and remanded for further record development. *Atkinson*, 70 F.4th at 1023. Even considering this finding, the *Atkinson* record is much more developed than Defendant's submission in this case, as this Court described:

> But although Atkinson has shown some support for the idea that a group's "dangerousness" is what mattered to the Founders, he does not provide much historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes. The distinction is not an obvious consequence of many of the laws that Atkinson, and his amicus especially, discuss. Nor does Atkinson tell us what the Founders would have viewed as a "violent" crime and what evidence they would consider in making that determination.

*Atkinson*, 70 F.4th at 1023.

Here, Defendant did much less than the *Atkinson* defendant. He did not develop any historical basis for individual assessment in this case. *Compare United States v. Hope*, 24-CR-30040-SPM-1, 2024 WL 4164755, at \*1 (S.D. Ill. Sept. 12, 2024). A litigant seeking the extraordinary remedy of invalidating an Act of Congress bears the burden of identifying the legal and factual basis for relief. Defendant never carried that burden. Merely uttering the words "as applied" does not transform a facial challenge into a developed as-applied challenge. If it did, every litigant could preserve every conceivable constitutional theory through a single conclusory sentence. This Court's preservation doctrines require more.

The district court should have denied Defendant's motion solely on the basis that his pleading failed to preserve an as-applied constitutional claim. Defendant's failure to develop any argument as to the prerequisites identified by this Court in *Atkinson* for the as-applied constitutional review he seeks results in waiver of the issue. *See, e.g., United States v. James*, 23 CR 345, 2024 WL 168119, at \*2 (N.D. Ill. Jan. 16, 2024). His as-applied challenge is therefore unreviewable. *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020) ("Waiver precludes appellate review[.]"). This Court has repeatedly held that perfunctory and undeveloped arguments are waived. *See United States v. McGhee*, 98 F.4th 816, 824–25 (7th Cir. 2024); *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

15

While this Court construes waiver principles liberally in favor of criminal defendants, a waiver finding is appropriate when a defendant makes a "calculated choice to stay silent on a particular issue" as a matter of strategy. *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015); *in accord United States v. Williams*, 168 F.4th 1051, 1056 (7th Cir. 2026); *United States v. Mansfield*, 21 F.4th 946, 954 (7th Cir. 2021). Indeed, when a defendant elects to pursue one argument and forego another as a matter of strategy, defendant waives those arguments he decided not to present. *Dridi*, 952 F.3d at 898 (citing *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005)).

Before the district court, Defendant chose to present only a rudimentary facial challenge to § 922(g) and elected not to present a detailed as-applied argument specific to Defendant's criminal history and characteristics. The circumstances below suggest this choice was intentional, and not accidental or neglectful to constitute mere forfeiture of the issue. *See, e.g.*, *Dridi*, 952 F.3d at 898. Indeed, as detailed above, this Court provided sufficient instructions for bringing as-applied challenges in *Atkinson*. *Atkinson* was decided in June 2023 and well before Defendant filed his Motion to Dismiss in December 2023. R. 21; App. 11-15. The Government extensively analyzed *Atkinson* in its response. R. 27. Accordingly, Defendant had ample opportunity to develop an as-applied challenge to § 922(g), just as several defendants did throughout the Circuit.

Had Defendant proceeded with a genuine as-applied claim, he would have been required to present particularized factual arguments concerning his non-dangerousness. *See Williams*, 113 F.4th at 662 ("in an as-applied challenge to § 922(g)(1), the burden rests

on [Defendant] to show he's not dangerous"). This Court's recent decision in *Watson* sheds further light on the arguments that Defendant would have had to develop to bring an as-applied challenge. In *Watson*, this Court did not analyze § 922(g)(1) in the abstract. Rather, this Court examined Defendant's particular criminal history and considered whether his prior offenses implicated the historical concerns that justify disarmament. *Watson* thus confirms that this inquiry is inherently individualized. That requirement alone exposes the defect in the proceedings below because Defendant presented no individualized argument to the district court. That decision was strategic because an individualized argument about Defendant's non-dangerousness would likely have emphasized Defendant's predicate conduct and criminal history and shown how dangerous he is.

As detailed in the Government's response to Defendant's motion to dismiss, Defendant's actions and prior felonies demonstrate that he is dangerous. Defendant did not rebut the facts the Government presented. At the time of his firearm possession in this case, Defendant had several felony convictions, including one for Aggravated Robbery and Attempted Vehicular Hijacking, and four convictions for possession of a firearm as a convicted felon. R. 27 at 4. Despite those convictions, on June 10, 2023, Defendant was found passed out behind the driver's seat of a car with an empty liquor bottle in his hand and a Glock 22, .40 caliber firearm with an extended magazine loaded with 22 rounds of ammunition under his arm. R. 27 at 3. Less than two weeks later, Defendant was arrested following a police chase where an officer observed Defendant

running away while aiming an assault rifle in their direction.  R. 27 at 3-4.  Once the

chase ended officers located a black Smith & Wesson M&P 15.  R. 27 at 3-4.

This conduct, along with Defendant's documented violent felony convictions,

demonstrates that he is dangerous.  Accordingly, had Defendant proceeded with a

genuine as-applied claim, he would have had to wrestle with several negative facts and

risk exposing significant weaknesses to his constitutional challenges.  Such conflict, in

combination with this Court's clear instructions on how to present as-applied challenges,

suggests Defendant chose not to present any substantive as-applied challenge in his

Motion to Dismiss as a matter of strategy.  Defendant therefore waived his as-applied

challenge by failing to develop it below and the district court erred by failing to find such

waiver.  As such, this Court should summarily reverse.

**D. The District Court Failed to Conduct any Analysis in Support of Its As-applied Finding**

Just as Defendant failed to present any individualized argument to support his as-

applied challenge to § 922(g), the district court failed to provide any analysis to support

its finding that § 922(g) was unconstitutional as applied to Defendant.  The district court

did identify Defendant's prior felony convictions in a footnote, *see* App. at 1 n.1, it did

not address them in the context of an as-applied constitutional analysis.  The district

court did not assess Defendant's dangerousness.  App. at 1-10.  Nor did the district

court explain why the historical tradition discussed in *Atkinson* failed to support

18

application of § 922(g)(1) to this Defendant. *Id.* The court simply announced that the statute was unconstitutional "as applied." App. at 10.

The district court's failure to find waiver in this case also runs afoul of the party presentation principle. *See United States v. Mason*, 974 F.2d 897, 901 (7th Cir. 1992) (the court does not consider bare allegations without factual or legal support); *United States v. Williams*, 877 F.2d 516, 518-19 (7th Cir. 1989) (It is not the court's responsibility to research and construct the parties' arguments). Under the party presentation principle, a court's review is limited to the arguments the parties actually raised below. *United States v. Page*, 123 F.4th 851, 865 (7th Cir. 2024); *Berkowitz*, 927 F.2d at 1384.

The only argument that Defendant attempted to develop below was a facial challenge to § 922(g)(1). R. 23; App. 11-15. Defendant's failure to support his as-applied argument with specific arguments about his criminal history and circumstances below leaves this Court with nothing to review except the Government's argument that Defendant was not entitled to as-applied relief because Defendant was demonstrably dangerous. *See* R. 27 at 33-35. Another fundamental problem with the district court's decision is that it appears to have granted relief on a theory that the defendant never actually litigated. The party presentation principle is a basic feature of the adversarial system and courts are generally limited to deciding those issues framed by the parties rather than constructing arguments on a litigant's behalf. *Berkowitz*, 927 F.2d at 1384; *Williams*, 877 F.2d at 518–19.

This Court provided defendants and district courts with a well-developed

roadmap regarding what arguments they need to develop in a claim alleging that § 922(g) is unconstitutional as applied. *See Atkinson*, 70 F.4th at 1022–1024 (emphasizing the need for a "proper, fulsome analysis" of the relevant historical tradition). Therefore, an as-applied challenge necessarily requires consideration of the challenger's own circumstances. Without a developed factual and legal presentation from the defendant, there is no meaningful as-applied inquiry for a district court to perform. *See Williams*, 113 F.4th at 662 ("in an as-applied challenge to § 922(g)(1), the burden rests on Williams to show he's not dangerous"). Although the district court cited to *Atkinson* in its Order, R.29, at 3-4; App. 3-4, it did not analyze any of the factors as to Defendant's circumstances. At a minimum, the district court here was required to: identify the facts that purportedly distinguished this Defendant from those constitutionally subject to § 922(g)(1), explain the historical basis for that distinction, and justify the conclusion that the statute was unconstitutional as applied to him. *See, e.g. Atkinson*, 70 F.4th at 1023–24. None of that occurred.

Defendant never identified the specific characteristics that supposedly rendered § 922(g)(1) unconstitutional as applied to him. The district court never identified them either. The resulting judgment therefore rests on an undeveloped constitutional theory untethered to any meaningful factual record or legal analysis. A district court may not invalidate a federal criminal statute through such a conclusory process. As such, this Court should reverse the district court's order dismissing the indictment and find that Defendant waived his as applied challenge to § 922(g)(1). Defendant had a full and fair

opportunity to develop an as-applied challenge in the district court and failed to do so. Nothing prevented him from presenting evidence, historical materials, or defendant-specific arguments. Thus, having failed to carry his burden, Defendant should not receive a second opportunity on remand.

**II.     Section 922(g)(1) is Constitutional As Applied to a Defendant with Four Prior Felony Firearms Convictions, and an Illinois Conviction for Aggravated Robbery and Attempted Vehicular Hijacking.**

### A. Standard of Review

This Court "review[s] a district court's decision on the constitutionality of a criminal statute *de novo*" and "review[s] findings of fact incident to that determination for clear error." *United States v. Viveros-Chavez*, 114 F.4th 618, 622 (7th Cir. 2024).

### B. Legal Framework

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. The Court cautioned, however, that the right to keep and bear arms "is not unlimited" and remains subject to "presumptively lawful regulatory measures," including "longstanding prohibitions on the possession of firearms by felons." *Id*. at 626, 627 n.26.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Bruen* clarified that, when

21

considering a Second Amendment challenge, courts must consider the Amendment's "text, as informed by history." *Id.* at 19. If the "plain text" of the Amendment "covers an individual's conduct," the regulation must be "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The historical inquiry focuses on "how and why the regulations burden a law-abiding citizen's right to armed self-defense," asking "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.[1]

In *United States v. Rahimi*, 602 U.S. 680, 692 (2024), the Court emphasized that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" and that the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791."

This Court recently upheld § 922(g)(1) as applied to a defendant with a prior drug-trafficking conviction. *Watson*, 171 F.4th 1012. There, the Court examined the historical record and discerned "two enduring traditions" that, taken together, "support disarming those with dangerous felonies." *Id.* at 1019–20. "First, legislatures deemed

---

[1] Notably, in *Bruen,* six Justices emphasized that certain firearms regulations—including prohibitions on felons' possession of firearms—remain constitutional. In his concurrence, Justice Alito explained that *Bruen* did not "disturb anything that [the Court] said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 72 (2022) (cleaned up). Justice Kavanaugh, writing separately and joined by Chief Justice Roberts, likewise reiterated that "longstanding prohibitions on the possession of firearms by felons" remain constitutional. *Id.* at 81 (cleaned up). *See also id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (same).

groups 'dangerous' and categorically disarmed them. Second, legislatures established as punishment the death penalty for violent felony convictions." *Id.* at 1019–20.

This Court then concluded that, "as applied to Watson," § 922(g)(1) "fit[] within [the historical] tradition." *Watson*, 171 F.4th at 1023. "Exercising its authority like state legislatures at the Founding, Congress reasonably determined that a felony drug conviction is a 'dangerous' crime." *Id.* As this Court observed, both "common sense" and "[f]ederal caselaw" support the conclusion that "drugs and guns together are dangerous." *Id.* And the fact that many founding-era felonies were punished by death "fortifie[d]" this Court's conclusion, under a "greater includes the lesser" theory, that § 922(g)(1) is constitutional "as applied to dangerous felons." *Id.* at 1024.

*Watson* left two questions open. First, *Watson* "reserve[d] ruling" on "whether Congress may deem non-violent felons 'dangerous.'" *Watson*, 171 F.4th at 1024–25. "That question has split the courts of appeals," with some courts holding that "no as-applied challenge can succeed under § 922(g)(1)" and others "identify[ing] successful as-applied challenges." *Id.* at 1024–25; *see also Prince*, 171 F.4th at 1011–12 ("As in *Watson*, we reserve decision on as-applied challenges by persons whose felony convictions do not suggest that firearms would be dangerous in their hands."). Second, *Watson* did not "decide . . . whether a defendant's entire profile can or should be considered" in determining whether he is "'dangerous' and can thus be disarmed." *Watson*, 171 F.4th at 1024 n.8. The Court had no need to reach that question because "Watson's predicate felony" alone "show[ed] him to be dangerous." *Id.*

23

**C. Section 922(g)(1) is Constitutional Even as Applied to Those Convicted of Nonviolent Felonies**

Section 922(g)(1) is constitutional as applied to Defendant for two alternative reasons, each related to a question that *Watson* left open.   First, the historical traditions identified in *Watson* extended beyond those with "violent felony convictions," *Watson*, 171 F.4th at 1020, and support Congress's decision to disarm all felons.   Any constitutional concerns in edge cases can be addressed through the relief-from-disability process Congress established in 18 U.S.C. § 925(c).   So, no as-applied challenge to § 922(g)(1) would prevail.   Second, even under *Watson*'s "dangerous felon" standard, Defendant's criminal history and contemporaneous conduct "shows him to be dangerous."   *Id.* at 1024 n.8.   By resolving either of the questions *Watson* left open, this Court can uphold § 922(g)(1)'s application as applied to Defendant.

**1. The Historical Traditions of Categorical Disarmament and Capital Punishment Extend to Nonviolent Felons**

As four other circuits have held, § 922(g)(1) is constitutional as a general matter because it "is consistent with this Nation's historical tradition of firearm regulations." *United States v. Duarte*, 137 F.4th 743, 761 (9th Cir. 2025) (en banc); *see Zherka v. Bondi*, 140 F.4th 68, 96 (2d Cir. 2025) (rejecting contention that § 922(g)(1) "violates the Second Amendment as applied to 'nonviolent' felons"); *United States v. Jackson*, 110 F.4th 1120, 1125–26 (8th Cir. 2024) (concluding that, as applied to all "convicted felons," § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation"); *United States v. Hunt*, 123 F.4th 697, 706–08 (4th Cir. 2024) (same); *see also United States v. Dubois*, 139

24

F.4th 887, 894–900 (11th Cir. 2025) (Pryor, C.J., concurring) (founding-era traditions "suggest" the same result).[2]

Both historical traditions that *Watson* relied upon indicate that § 922(g)(1) is constitutional even as applied to those convicted of nonviolent felonies.

### a. Disarming the dangerous

First, as *Watson* correctly concluded, legislatures may permissibly "determine that classes of people are dangerous" and impose "categorical restrictions" or "class-wide bans" on their firearm possession. *Watson*, 171 F.4th at 1021–22; *see United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) ("That *some* categorical limits are proper is part of the original meaning [of the Second Amendment]."). That historical authority to disarm potentially dangerous people extends beyond those convicted of felonies that involve an allegation of violence. *Watson*, 171 F.4th at 1021–22 (discussing disarmament of tramps). Instead, the history suggests that Congress may categorically "deem non-violent felons 'dangerous'" consistent with the Second Amendment. *Id.* at 1024.

The historical record demonstrates that legislatures could disarm categories of persons based on "threatened violence" or a "propensity for dangerous behavior," *Kanter*

---

[2] Two additional circuits have upheld § 922(g)(1) without conducting a full historical review, concluding that *Bruen* did not disturb prior circuit precedent upholding the statute based on *Heller*'s statements about felon-dispossession laws. *See Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025); *Dubois*, 139 F.4th at 890–94.

Only the Third and Fifth Circuits have found § 922(g)(1) unconstitutional in any applications. The Third Circuit found the statute unconstitutional as applied to a civil plaintiff with a nearly 30-year-old conviction for understating his income on a food-stamp application. *Range v. Attorney Gen. United States*, 124 F.4th 218, 223 (3d Cir. 2024) (en banc). And the Fifth Circuit has done so only after applying an overly rigid test that cannot be squared with *Watson*. *See United States v. Hembree*, 165 F.4th 909 (5th Cir. 2026); *United States v. Cockerham*, 162 F.4th 500 (5th Cir. 2025); *United States v. Mitchell*, 160 F.4th 169 (5th Cir. 2025).

25

*v. Barr*, 919 F.3d 437, 456, 469 (7th Cir. 2019) (Barrett, J., dissenting), and not merely those who committed actual violence. For example, during the American Revolution, the Continental Congress recommended, and most States enacted, laws disarming loyalists and others who refused to swear allegiance to the new Republic.[3] And this "trend of class-wide disarmament continued into the mid-1800s," when "[d]ozens of laws were enacted that categorically prohibited tramps from possessing firearms." *Watson*, 171 F.4th at 1021 & n.6 (citing statutes).

As the Eighth Circuit observed, "[n]ot all persons disarmed under historical precedents—not all Protestants or Catholics in England, not all Native Americans, not all Catholics in Maryland, not all early Americans who declined to swear an oath of loyalty—were violent or dangerous persons." *Jackson*, 110 F.4th at 1128. And, in the nineteenth century, "not all 'tramps' were 'vicious' or 'dangerous.'" *Duarte*, 137 F.4th at 760. Yet historical legislatures "were permitted to categorically disarm those they deemed dangerous without having to perform 'an individualized determination of dangerousness as to each person in a class of prohibited persons.'" *Duarte*, 137 F.4th at

---

[3] See 4 *Journals of the Continental Congress* 1774-1789, at 205 (Worthington Chauncey Ford ed., 1906) (Mar. 14, 1776); Act of Sept. 20, 1777, ch. 40, § 20, *Acts of the General Assembly of the State of New-Jersey* 90 (1777); Act of 1777, ch. 6, § 9, 24 *The State Records of North Carolina* 89 (Walter Clark ed., 1905); Act of May 1, 1776, ch. 21, § 2, 5 *Acts and Resolves, Public and Private, of the Province of Massachusetts Bay* 480 (1886); Resolves of Apr. 6, 1776, 8 *The Statutes at Large of Pennsylvania from 1682-1801*, at 559-561 (1902); Act of 1776, 7 *Records of the Colony of Rhode Island and Providence Plantations in New England* 567 (John Russell Bartlett ed., 1862); Act of May 1777, ch. 3, 9 *The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619*, at 282 (William Waller Hening ed., 1821).

760 (quoting *Jackson*, 110 F.4th at 1128); *accord Watson*, 171 F.4th at 1022 ("[T]he legislature may determine that classes of people are dangerous.").

Even laws that focused on disarming threatening individuals, as opposed to dangerous groups, were based on the risk of *future* dangerousness. Historical surety laws were "[a] form of 'preventive justice'" that "provided a mechanism for preventing violence before it occurred." *Rahimi*, 602 U.S. at 695, 697. And historical affray or "going armed" laws punished those who terrified others with weapons because "[s]uch conduct disrupted the 'public order' and 'led almost necessary to actual violence.'" *Id.* at 697 (brackets omitted) (quoting *State v. Huntly*, 25 N.C. 418, 421–22 (1843) (per curiam)). Thus, the historical tradition supports restrictions designed to mitigate the *risk* of violence, even if it has not yet occurred.

This historical tradition permits Congress to make the categorical judgment that all felons "present a special danger of misuse" of firearms, *Rahimi*, 602 U.S. at 682, even those convicted of nonviolent offenses like forgery and obstruction of justice. As the Supreme Court has observed, Congress through the Gun Control Act "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). "In order to accomplish this goal, Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119 (1983).

In fact, *Watson* itself has already reached a similar conclusion. It recognized that possession of cocaine with intent to distribute "is a dangerous felony," *Watson*, 171 F.4th at 1025, even though that offense does not require proof of any violence, *see* 21 U.S.C. § 841(a). Indeed, many crimes such as "residential burglary and drug dealing are not necessarily violent" but are nevertheless "dangerous because they often lead to violence." *Folajtar v. Attorney Gen. of the United States*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting). And even crimes not usually associated with violence can potentially demonstrate "a propensity for dangerous behavior." *Kanter*, 919 F.3d at 469 (Barrett, J., dissenting).

Furthermore, convictions even for nonviolent felonies can be indicative of dangerousness. A 2021 study found that 82.2% of state prisoners whose most serious commitment offense was fraud or forgery were re-arrested within ten years of release:

**TABLE 11**
Percent of state prisoners released in 24 states in 2008 who were arrested within 10 years following release, by most serious commitment offense and type of post-release arrest offense

| Most serious commitment offense | Any | Violent | | | | | Property | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Total violent[a] | Homicide | Rape/ sexual assault | Robbery | Assault | Total property[b] | Burglary | Larceny/ motor vehicle theft | Fraud/ forgery | Drug | Public order |
| All released prisoners | 81.9% | 39.6% | 1.2% | 2.5% | 7.4% | 31.3% | 47.4% | 14.5% | 28.9% | 16.0% | 47.1% | 68.3% |
| Violent[a] | 76.7% | 44.2% | 1.7% | 3.6% | 8.5% | 35.4% | 40.1% | 11.2% | 22.1% | 11.8% | 36.3% | 65.1% |
| Homicide | 57.4 | 28.1 | 2.3 | 1.8 | 4.0 | 21.9 | 22.9 | 5.2 | 11.5 | 5.8 | 25.1 | 45.9 |
| Rape/sexual assault | 62.8 | 25.8 | 0.5 | 6.3 | 2.7 | 17.5 | 21.2 | 4.9 | 10.4 | 6.6 | 17.4 | 55.8 |
| Robbery | 82.5 | 47.5 | 1.9 | 3.0 | 15.6 | 36.0 | 48.9 | 14.3 | 31.5 | 15.2 | 45.9 | 67.0 |
| Assault | 82.0 | 52.8 | 2.2 | 3.0 | 7.4 | 45.0 | 45.7 | 13.4 | 22.9 | 13.1 | 39.5 | 70.9 |
| Property[b] | 86.7% | 39.7% | 0.9% | 2.3% | 8.4% | 30.8% | 63.6% | 24.1% | 44.0% | 23.3% | 48.3% | 72.1% |
| Burglary | 87.4 | 41.4 | 0.9 | 2.7 | 8.5 | 32.4 | 62.9 | 30.9 | 42.0 | 19.3 | 46.8 | 72.3 |
| Larceny/motor vehicle theft | 87.6 | 40.2 | 1.2 | 2.5 | 10.0 | 30.3 | 66.7 | 22.4 | 49.7 | 24.0 | 51.9 | 73.8 |
| Fraud/forgery | 82.2 | 31.7 | 0.7 | 1.4 | 5.4 | 25.3 | 59.8 | 12.9 | 38.9 | 33.5 | 42.4 | 65.5 |
| Drug | 81.4% | 34.8% | 1.1% | 1.9% | 6.2% | 27.7% | 40.3% | 10.0% | 22.5% | 13.9% | 57.6% | 65.8% |
| Public order | 82.1% | 41.4% | 1.3% | 2.5% | 6.2% | 33.0% | 42.2% | 10.5% | 23.2% | 12.9% | 41.4% | 70.9% |

Note: The numerator for each percentage is the number of persons arrested for that offense during the 10-year follow-up period, and the denominator is the number released after serving time for each type of commitment offense. For prisoners serving time for more than one offense, the most serious offense is the one with the longest sentence length. Details may not sum to totals because a person may be arrested more than once for different types of offenses and each arrest may involve more than one offense. See appendix table 7 for standard errors.
[a]Includes other violent offenses that are not shown separately.
[b]Includes other property offenses that are not shown separately.
Source: Bureau of Justice Statistics, Recidivism of State Prisoners Released in 2008 data collection, 2008–2018.

Bureau of Justice Statistics, Recidivism of Prisoners Released in 24 States in 2008: A 10-Year Follow-Up Period (2008-2018), at 10 (Table 11), https://bjs.ojp.gov/BJS_PUB/rpr24s0810yfup0818/Web%20content/508%20compliant%20PDFs (last accessed July 20, 2026). And nearly one third of those prisoners (31.7%) were re-arrested for a *violent* offense. *Id.*

Just as historical legislatures could disarm loyalists who had not yet committed violence, Congress could reasonably conclude that a category of people who: (a) have already shown their disregard for the law by committing and being convicted of a non-violent felony-level crime; and (b) have a 31.7% chance of being arrested for a violent crime within ten years of release "present a special danger of misuse" of firearms.

29

*Rahimi*, 602 U.S. at 698. Thus, at least as a general matter, Congress can rationally disarm even non-violent felons.

### b. "Greater includes the lesser"

Second, historical legislatures authorized severe punishment such as the death penalty and estate forfeiture, not only "for violent felony convictions," *Watson*, 171 F.4th at 1020, but also for an array of nonviolent offenses. In England, death was an authorized punishment for serious types of larceny, such as horse-stealing, stealing sheep or cattle, taking cloth from the place of manufacture, plundering shipwrecks, and stealing letters sent by post. 4 William Blackstone, *Commentaries on the Laws of England* 239 (1769). In America, several colonies and states authorized the death penalty for counterfeiting and forgery. *See* Act of Feb. 7, 1788, ch. 20, 1788 N.Y. Laws 632; Act of Mar. 5, 1737, No. 650, § 3, 1737 S.C. Laws 147; Acts and Laws of The English Colony of Rhode Island and Providence-Plantations in New-England in America 33-34 (1767). Others imposed severe penalties short of death, but at least as serious as disarmament, for counterfeiting and forgery. [4] Perhaps most significantly, the First Congress authorized the death penalty for counterfeiting and forgery of public securities in 1790—

---

[4] *See* 9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302-03 (1821) (offender "shall forfeit his whole estate," receive "thirty nine lashes," and "serve on board some armed vessel in the service of this commonwealth, without wages, for a term not exceeding seven years"); Act of Dec. 24, 1771, 1771 N.H. Laws 565-66 (offender "shall be set on the Pillory in some open place, and there have one of his Ears cut off, and also shall have and suffer Imprisonment by the space of one whole Year"); Act of Feb. 8, 1783, ch. 46, 1783 Del. Laws 773 (offender "shall be whipped at the public whipping-post of the county on his or her bare back with thirty-nine lashes well laid on, and be set in the pillory for one hour, and have the soft parts of his or her ears cut off").

less than a year after adopting the language of the Second Amendment.    *See* Act of Apr. 30, 1790, ch. 9, § 14, 1 Stat. 112, 115.    And the Second Congress authorized the death penalty for theft of the mail two years later. Act of Feb. 20, 1792, § 17, 1 Stat. 232, 237. Thus, the historical tradition of severely punishing felonies was not limited to violent felonies.    If historical legislatures could authorize such severe and permanent punishments for nonviolent felonies, then the "lesser restriction" of disarmament under § 922(g)(1) is likewise permissible.

Beyond these severe punishments, some jurisdictions punished certain crimes with the forfeiture of firearms.    A New York law provided that a person would "be disarmed" upon conviction for furnishing provisions to the British army or for opposing the authority of the Continental Congress.    Resolutions of Sept. 1, 1775, *in* 1 *Journals of the Provincial Congress, Provincial Convention, Committee of Safety and Council of Safety of the State of New-York* 132 (1842).    A South Carolina law provided that a person would "be disarmed" upon "due conviction" for bearing arms against, or opposing the measures of, the Continental Congress.    Resolution of Mar. 13, 1776, *in Journal of the Provincial Congress of South Carolina*, 1776, at 77 (1776).    And a Connecticut law provided that anyone "duly convicted" of seditious libel "shall be disarmed and not allowed to have or keep any arms."    Act of Dec. 1775, *in The Public Records of the Colony of Connecticut From May, 1775 to June 1776, inclusive* 193 (Charles J. Hoadly ed., 1890).

Other jurisdictions authorized seizure of firearms for certain hunting-related offenses.    *See, e.g.*, Act of Oct. 9, 1652, Laws and Ordinances of New Netherlands 138

(1868) (forbidding partridge and game hunting "on pain of forfeiting the gun"); Act of Apr. 20, ch. III (1745), 23 Acts of the North Carolina General Assembly 218, 219 (1805) (1745 law prohibiting nonresidents from hunting deer in "the King's Wast" and stating that any violator "shall forfeit his Gun" to the authorities); 1771 N.J. Laws 19-20 (New Jersey law punishing non-residents caught trespassing with firearms). These offenses were nonviolent, and not necessarily associated with dangerousness, yet they nevertheless provided a basis to deprive an offender of his weapons.

The understanding that legislatures could disarm persons who defied the law appears to have been one of the few points of consensus in the otherwise-fractious ratification debates. At Pennsylvania's ratifying convention, Anti-Federalists proposed a bill of rights that would have, among other things, prohibited "disarming the people, or any of them, *unless for crimes committed*, or real danger of public injury from individuals." 2 *The Documentary History of the Ratification of the Constitution* 598 (Merrill Jensen ed., 1976) (emphasis added). The Federalists, who considered a bill of rights unnecessary, ultimately defeated the proposal, but the Anti-Federalists published it in the "highly influential" Dissent of the Minority of the Convention. *Heller*, 554 U.S. at 604. Given the Anti-Federalists' skepticism of federal power, it is telling that even that group accepted the disarmament of convicted criminals.

Leading jurists of the new Nation agreed. Model legal codes proposed by Edward Livingston in the early nineteenth century listed the "suspension" and permanent "forfeiture" of "political or civil rights" — including the "right of bearing arms

in defence of the country" — among the punishments courts could impose. *See* Edward

Livingston, *System of Penal Law, Prepared for the State of Louisiana* 26-27, 29, 49, 73, 138

(1824); *see also* Edward Livingston, *A System of Penal Law for the United States of America*

19-20, 40, 79, 126 (1828) (similar provisions in model penal code for the United States).

Although, like the Model Penal Code, the Livingston Codes were never enacted in toto,

the Supreme Court has cited them as evidence of the types of laws that would have been

considered permissible at the Founding. *See Beauharnais v. People of State of Ill.*, 343 U.S.

250, 255 n.4 (1952); *Cruzan by Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 294

(1990) (Scalia, J., concurring). In sum, the Second Amendment's contemporaneous

understanding allowed disarming those convicted of felony offenses.

**2. Any constitutional concerns on the margins are remediated by § 925(c)**

Even if § 922(g)(1) raised constitutional concerns in some unusual applications,

Congress has addressed those concerns through 18 U.S.C. § 925(c). Under that

provision, a person who is disqualified from possessing firearms under § 922(g)'s various

provisions "may make application to the Attorney General for relief from the

disabilities." *Id.* "[T]he Attorney General may grant such relief" if the applicant shows

that "the circumstances regarding the disability, and the applicant's record and

reputation, are such that the applicant will not be likely to act in a manner dangerous to

public safety and that the granting of the relief would not be contrary to the public

interest." *Id.* A person whose application is denied may seek judicial review in federal

district court. *Id.*

Before 2025, that statutory authority had been delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *See United States v. Bean*, 537 U.S. 71, 74 (2002). Since 1992, however, appropriations statutes have included provisos prohibiting ATF from using appropriated funds to act on § 925(c) applications. *See id.* In combination, the delegation and the appropriations bar effectively suspended the § 925(c) relief-from-disabilities program.

Recognizing that the appropriations bar applies only to ATF, the Attorney General issued an interim final rule withdrawing the delegation of authority to ATF to administer § 925(c). *See Withdrawing the Attorney General's Delegation of Authority*, 90 Fed. Reg. 13080 (Mar. 20, 2025). The Attorney General has already granted relief under § 925(c) to 32 individuals. *See Granting of Relief; Federal Firearms Privileges*, 90 Fed. Reg. 17835 (Apr. 29, 2025); 91 Fed. Reg. 8532 (Feb. 18, 2026). The Department also has issued a notice of proposed rulemaking to establish "criteria to guide determinations for granting relief." *Application for Relief from Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34394 (July 22, 2025). A final rule should be issued shortly.

By providing a mechanism through which convicted felons can regain their ability to possess firearms, § 925(c) addresses any constitutional concerns about the breadth and duration of the restriction imposed by § 922(g)(1). *See Williams*, 113 F.4th at 661 (observing that "the rearmament criteria in § 925(c) map neatly onto the dangerousness principle underlying traditional firearm regulation"). Section 925(c) also provides a

more workable process for restoring firearms rights than would a court-administered regime of as-applied challenges. *See Bean*, 537 U.S. at 77 ("Whether an applicant is 'likely to act in a manner dangerous to public safety' presupposes an inquiry into that applicant's background —a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation.").

*Watson* observed that the Attorney General "has begun to restart the 925(c) process" and that therefore "felon status does not necessarily mean permanent disarmament." *Watson*, 171 F.4th at 1025. Although *Watson* had no occasion to consider the issue given the parties' arguments there, the Court should now hold that § 925(c) fully resolves any constitutional concerns regarding § 922(g)(1)'s application to nonviolent felons in edge cases and renders the statute constitutional.

### 3. At the Very Least, § 922(g)(1) is Constitutional As Applied to Defendant, Given His Dangerousness

Even if § 922(g)(1) were unconstitutional as applied to some individuals convicted of nonviolent felonies, Defendant's as-applied challenge would fail even under *Watson*'s dangerousness standard. *Watson* held that § 922(g)(1) is constitutional "as applied to dangerous felons." *Watson*, 171 F.4th at 1024. Defendant's uncontested criminal history includes several violent felonies, including one for Aggravated Robbery and Attempted Vehicular Hijacking, and four convictions for possession of a firearm as a convicted felon. R. 27 at 4. These predicate felony offenses only demonstrate

Defendant's dangerousness. Moreover, Defendant's conduct in this case certainly supports a finding of Defendant's dangerousness. As detailed in the Government's response to Defendant's motion to dismiss, at the time of his firearm possessions in this case, Defendant was found passed out behind the driver's seat of a car with an empty liquor bottle in his hand and a Glock 22, .40 caliber firearm with an extended magazine loaded with 22 rounds of ammunition under his arm. R. 27 at 3. Less than two weeks later, Defendant was an occupant of a car involved in a police chase and was seen running away while aiming an assault rifle in the direction of an officer. R. 27 at 3-4. Once the chase ended and Defendant surrendered himself, officers located a black Smith & Wesson M&P 15. R. 27 at 3-4. Cumulatively, Defendant's conduct in this case and his uncontested criminal history fall within *Watson*' dangerousness standard. Accordingly, Defendant's as-applied challenge must fail.

Finally, it is also significant that Defendant chose to arm himself in violation of the law rather than seeking relief through § 925(c) or a civil declaratory judgment action. That fact also indicates that Defendant is particularly dangerous. Indeed, by enacting § 925(c), "Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress'[s] purpose 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.'" *Lewis v. United States*, 445 U.S. 55, 64 (1980) (quoting *Barrett*, 423 U.S. at 218). Yet "[i]nstead of contesting § 922(g)(1) through a declaratory judgment action," Defendant "violated the

law in secret." *United States v. Gay*, 98 F.4th 843, 847 (7th Cir. 2024). That is yet another reason to deny Defendant's constitutional challenge.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests this Court to reverse the Memorandum and Order of the District Court that dismissed the indictment in this case.

**Respectfully submitted,**

**THE UNITED STATES OF AMERICA**

**STEVEN D. WEINHOEFT**
**United States Attorney**

**s/ Amanda R. McQuaid**
**AMANDA R. MCQUAID**
**THOMAS E. LEGGANS**
**Assistant United States Attorney**
**Office of the United States Attorney**
**Nine Executive Drive**
**Fairview Heights, Illinois 62208**
**(618) 628-3700**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), as modified by Circuit Rule 32(c), because this brief contains 9,042 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared using Microsoft Word 2016, in 12-point Book Antiqua font, a proportionally spaced typeface.

**Respectfully Submitted,**

**STEVEN D. WEINHOEFT**
**United States Attorney**

**/s/ Amanda R. McQuaid**
**AMANDA R. MCQUAID**
**THOMAS E. LEGGANS**
**Assistant United States Attorney**
**Nine Executive Drive**
**Fairview Heights, Illinois 62208**
**(618) 628-3700**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | COURT OF APPEALS |
| | ) | NO. 22-1808 |
| Plaintiff-Appellant, | ) | |
| | ) | Southern District of Illinois |
| vs. | ) | District Court No. 23-CR-30112-SMY |
| | ) | |
| BERNARD L. CHERRY, | ) | Honorable, Staci M. Yandle |
| | ) | District Judge |
| Defendant-Appellee. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing and by placing said copy in a postpaid envelope addressed to the following:

s/ *Amanda R. McQuaid*
Assistant United States Attorney

No. 24-1322

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant,*

v.

**BERNARD L. CHERRY,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:23-CR-30112-SMY
The Honorable Staci M. Yandle, District Judge

# APPENDIX FOR APPELLANT UNITED STATES

STEVEN D. WEINHOEFT
*United States Attorney*

AMANDA R. MCQUAID
THOMAS E. LEGGANS
*Assistant United States Attorney*
*Office of the United States Attorney*
*Nine Executive Drive*
*Fairview Heights, Illinois 62208*
*(618) 628-3700*

## CERTIFICATE OF COMPLIANCE WITH RULE 30(d)

I certify that the materials required by Cir. R. 30(a) and (b) are included in this appendix.

**Respectfully Submitted,**

**STEVEN D. WEINHOEFT**
**United States Attorney**

**/s/ Amanda R. McQuaid**
**AMANDA R. MCQUAID**
**THOMAS E. LEGGANS**
**Assistant United States Attorney**
**Nine Executive Drive**
**Fairview Heights, Illinois 62208**
**(618) 628-3700**

**APPENDIX**
**TABLE OF CONTENTS**

**Description**                                        **Appendix Numbers**

District Court's Memorandum and Order (Feb. 1, 2024) ......................................A1-A10

Defendant Cherry's Motion to Dismiss the Indictment .......................................A11-A15

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cr-30112-SMY |
| | ) | |
| BERNARD L. CHERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Defendant Bernard L. Cherry is charged by indictment with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and has pleaded not guilty (Docs. 1,11).[1] Now pending before the Court is Cherry's motion to dismiss the indictment, in which he argues that 18 U.S.C. § 922(g)(1) violates his Second Amendment rights (Doc. 21). The Government opposes the motion (Doc. 27). For the following reasons, Cherry's motion is **GRANTED**.

### Background

Cherry asserts that 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to him and moves to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). Pursuant to Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule

---

[1] Although the Indictment does not identify a qualifying felony conviction, Cherry's criminal record reflects felony convictions for an acting with others Aggravated Robbery and Attempted Vehicular Hijacking when Cherry was 17 years old (St. Clair County case number 05-CF-520) and federal felon in possession of a weapon charges (SDIL case numbers 07-CR-30079-MJR, 17-CR-30040-DRH; EDMo case number 12-CR-00447-CEJ; St. Louis City case number 1222-CR03983).

A1

12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008). The Court therefore analyzes Cherry's motion under Rule 12(b)(1).

Section 922(g)(1) makes it unlawful for any person "who has been convicted of . . . a crime punishable by imprisonment for a term exceeding one year" to "possess . . . any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). The Second Amendment to the U.S. Constitution directs: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Recently, in *New York States Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court struck down a New York law which required residents to demonstrate cause to obtain a license to carry a handgun outside the home. Noting that certain firearm regulations remain constitutional, the Court provided an analytical framework for determining whether a particular firearm regulation violates the Second Amendment: Courts must first determine whether the "Second Amendment's plain text covers an individual's conduct." *Id*. at 2129–30. If so, the Constitution presumptively protects that conduct, and the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126. If the government cannot meet this burden, then the

A2

individual's firearm-related conduct falls within the Second Amendment's "unqualified command" and is protected.  *Bruen*, 142 S. Ct. at 2126.

The Seventh Circuit has not decided the constitutionality of § 922(g)(1) since *Bruen* but has instructed district courts to conduct a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)." *Atkinson v. Garland*, 70 F.4th 1018, 1022-24 (7th Cir. 2023).  The Court articulated a series of "interrelated and non-exhaustive questions" to "help focus the proper analysis…":

> 1. Does § 922(g)(1) address a 'general societal problem that has persisted since the 18th century?' ... If this problem existed during a relevant historical period, did earlier generations address it with similar or 'materially different means?';
>
> 2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular?  Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment).  When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction imposed by § 922(g) (1).  To answer the question, the district court and the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1);
>
> 3. Are there broader historical analogues to § 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming 'dangerous' groups other than felons?  The parties should not stop at compiling lists of historical firearms regulations and practices.  The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to § 922(g)(1);
>
> 4. If the district court's historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1)?  On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible;

A3

5. If history supports Atkinson's call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony?  And what evidence can a court consider in assessing whether a particular felony conviction was violent?  For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements?  *Bruen* shows that these distinctions should also have firm historical support.  *See* 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are 'relevantly similar,' including in terms of how and why the regulations burden gun rights)."

*Atkinson*, 70 F.4th at 1022-24.

The *Atkinson* Court recognized that "the historical analysis required by *Bruen* will be difficult and no doubt yield some measure of indeterminacy."  *Id*. at 1024.  And predictably, a circuit split has developed on the issue.  *See United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (upholding the statute's constitutionality, as applied to a defendant convicted of state law felonies for selling controlled substances); *see also United States v. Dunn*, 76 F.4th 1062, 1068 (8th Cir. 2023) ("[f]ollowing [*Bruen*], this court concluded that the felon-in-possession statute is constitutional, and there is 'no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)' ") (quoting *Jackson*, 69 F.4th at 502); *but see Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98–99, 106 (3d Cir. 2023) (en banc) (finding that the government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming a defendant convicted of the felony-equivalent state offense of making a false statement to obtain food stamps).

Courts in this district and throughout the circuit have also grappled with, and decided on various grounds, the constitutionality of § 922(g)(1) under *Bruen* – most, but not all upholding the statute as constitutional.  *See United States v. Ware*, No. 22-CR-30096, 2023 WL 3568606 (S.D. Ill. May 19, 2023) (McGlynn, S.) (finding felons are protected under plain text of the Second

A4

Amendment and that Section 922(g)(1) is consistent with this Nation's regulation of firearms); *United States v. Sloat*, No. 22-CR-30017, 2023 WL 8455112 (S.D. Ill. Dec. 6, 2023) (Dugan, D.) (finding the Nation's historical tradition of firearm regulation, and even outright prohibition, against the use or possession of firearms by individuals perceived or deemed to be dangerous, untrustworthy, or criminal.); *United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924 (N.D. Ill. Oct. 3, 2023) (Chang, J.) (finding felons are protected under plain text of the Second Amendment, that § 922(g)(1) is consistent with this Nation's regulation of firearms, and no historical evidence for as-applied challenge); *United States v. Johnson*, No. 23 CR 156, 2023 WL 6276562 (N.D. Ill. Sept. 26, 2023) (Kendall, J.) (finding felons are not protected under plain text of the Second Amendment); *United States v. Anderson*, No. 1:22-CR-0594, 2023 WL 7531169 (N.D. Ill., Nov. 13, 2023) (Gettleman, J.) (finding that Section 922(g)(1) is unconstitutional facially and as-applied to felons covered under Second Amendment's plain text and government could not establish historical tradition of firearm regulation); *United States v. Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill., November 30, 2023) (Johnson Coleman, S.) (conducting an individualized assessment and finding the defendant's criminal record did not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly, and that Section 922(g)(1) is unconstitutional as applied to him).

## Discussion

The *Bruen* analysis is aptly summarized as follows:

> The *Bruen* Court provides two avenues of historical inquiry. The first avenue of inquiry is a 'straightforward historical inquiry,' which applies when 'a challenged regulation addresses a general societal problem that has persisted since the 18th century.' *Id*. at 2131. Under this inquiry, courts must identify a 'distinctly similar historical regulation addressing that problem.' *Id*. The second avenue of inquiry is by 'analogy.' *Id*. at 2132. Because '[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or

A5

the Reconstruction generation in 1868,' there is not always straightforward correspondence, and unprecedented societal concerns or dramatic technological changes may require a 'more nuanced approach.' *Id*. Under these circumstances, the *Bruen* Court directed courts to consider 'historical analogies' to the challenged regulation to determine whether the regulation sufficiently resembles historically acceptable restrictions. *Id*.

Evaluating whether a historical regulation is a proper analogue for a for a 'distinctly modern' firearm regulation requires a determination of whether the two regulations are 'relevantly similar.' *Id*. The *Bruen* Court directed lower courts to centrally consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.' *Id*. at 2133. The Court emphasized that 'analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check.' *Id*. It requires a 'well-established and representative historical ***analogue***, not a historical ***twin***.' *Id*. (Emphasis in original).

*U.S. v. Anderson*, 2023 WL 7531169, at *2 (N.D. Ill. Nov. 13, 2023).

Noting that committing a felony results in the forfeiture of certain constitutional rights, including the right to vote, the right to hold office, and the right to serve on a federal jury, the Government maintains that § 922(g)(1) "accords with the historical meaning of the Second Amendment…". (Doc. 27 at p. 11). There is no dispute in this case that the straightforward historical inquiry does not apply as there were no laws categorically restricting individuals with felony convictions from possessing firearms at the time of the Founding or ratification of the Second or Fourteenth Amendments. The Government argues however that Defendant's motion should be denied under the analogy inquiry because the Second Amendment's plain text does not presumptively protect the right of felons to possess firearms, and even if it did, § 922(g)(1) remains constitutional as applied to all felons because it is consistent with the Nation's historical tradition of firearm regulation.

Referencing the *Heller* and *Bruen* Courts' repeated references to "law abiding" and "responsible citizens," the Government first argues that Cherry, as a convicted felon, is excluded

from "the people" as contemplated by the Second Amendment.  Judicial opinions are not to be read like statutes and must be read holistically in "light of the subject under consideration." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010).  Prior to *Bruen*, the Seventh Circuit noted that "[w]hile some of *Heller*'s language does link Second Amendment rights with the notions of 'law-abiding citizens' and 'members of the political community,' those passages did not reflect an attempt to define the term 'people.'" (Internal citations omitted).  *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015).  Moreover, is his concurrence in *Bruen*, Justice Alito specifically states that the decision "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun."  *Bruen*, 142 S. Ct. at 2157.

This Court finds that the references cited by the Government are clearly dicta, which the Court is not bound to follow.  *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.,* 8 F.3d 607, 609 (7th Cir. 1993).  It is evident that Cherry is included in "the people" covered by the Second Amendment, and that his conduct is presumptively protected.  As such, the Court turns to consider whether § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.

Under *Bruen*, when a "distinctly modern" regulation such as § 922(g)(1) is at issue, the government must offer historical regulation that is "relevantly similar."  *Bruen*, 142 S. Ct. at 2132.  The Court must then determine whether the proffered historical analogues "impose a comparable burden on the right of armed self-defense *and* whether that burden is comparably justified" as the burden imposed by § 922(g)(1).  *Id*. at 2133 (emphasis added).  As the *Bruen* Court clarified:

> … analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check.  On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted.  On the other hand, analogical reasoning requires only that the government identify a

Page **7** of **10**

A7

well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Bruen,* 142 S. Ct. at 2133 (emphases in original).

Here, the Government asserts that two types of laws are proper historical analogues for § 922(g)(1): "(a) laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms; and (b) laws authorizing capital punishment and estate forfeiture for felonies" (Doc. 27, p. 16). The first category of laws cited by the Government involves Catholics in England who were disarmed for refusing to renounce their faith, Native Americans and enslaved Black people in Colonial America who were disarmed for not being "dependable adherents to the rule of law," and individuals who were disarmed for failing to take oaths of loyalty to the government during the Revolutionary War (Doc. 27, pp. 17-23). For the second category, the Government points to crimes that were punishable by death and forfeiture of estate in Colonial America.

Citing *Jackson* and *Range*, the Government contends "[w]hile some of these categorical prohibitions of course would be impermissible today under other constitutional provisions, they are relevant here in determining the historical understanding of the right to keep and bear arms." *Jackson*, 69 F.4th 503; *see also Range*, 69 F.4th at 122, n.50 (Krause, J., dissenting) (rejecting these "bigoted and unconstitutional laws" but citing them to demonstrate the "tradition of categorical, status-based disarmaments"). This Court disagrees. Laws reflecting the English tradition of categorically disarming religious, ethnic, and racial minorities are not relevantly similar and historically analogous to § 922(g)(1). These laws, justified solely on discriminatory bases, would thankfully be prohibited today. As such, this Court finds that they cannot impose a "comparably justified" burden on the right of armed self-defense.

Conversely, the text, history, and tradition of laws disarming British loyalists, based upon conduct demonstrating that they could not be trusted to obey the law or posed a danger to the political community if armed – not upon their religion, race, or ethnicity – are arguably historically analogous. They are relevant to modern day justifications for the felon in possession statute. But this does not end the inquiry. "The inquiry required by *Bruen*… is not merely whether a dispossession statute's burden is "comparably justified," but also whether the statute imposes a "comparable burden" on the right itself. *Bruen*, 142 S. Ct. at 2133.

The Government has not met its burden to provide evidence of a dispossession law or regulation that imposes a burden comparable to § 922(g)(1). The loyalty oath laws, under which "untrustworthy" individuals were permitted to regain their right to possess firearms by swearing an oath of allegiance to the state or United States are not a "distinctly similar," or even "relevantly similar," historical analogue to § 922(g)(1)'s permanent prohibition on firearm possession by felons. 18 U.S.C. § 921(a)(20); *see also Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (examining certain "method[s] of restoring civil rights" under Illinois law after an individual's state sentence expired). Rather, by imposing lifetime dispossession and criminalization, § 922(g)(1) clearly imposes a significantly greater burden on a convicted felon's right to keep and bear arms.

The second category of laws referenced by the Government, laws that authorize capital punishment and estate forfeiture for certain felonies, fare no better. While the penalties were severe, they were imposed for criminal conduct; not for status crimes that arose from otherwise lawful conduct by felons who had completed their sentences. As the Third Circuit recognized in *Range*:

A9

> The greater does not necessarily include the lesser: founding-era governments' execution of some individuals convicted of certain offenses does not mean the State, then or now, could constitutionally strip a felon of his right to possess arms if he was not executed. As one of our dissenting colleagues notes, a felon could "repurchase arms" after successfully completing his sentence and reintegrating into society. Krause Dissent at 127-28. That aptly describes Range's situation. So the Government's attempt to disarm Range is not "relevantly similar" to earlier statutes allowing for execution and forfeiture. *See Bruen*, 142 S. Ct. at 2132.

*Range*, 69 F.4th at 105.

This Court agrees with the Third Circuit. The consequences imposed by these laws, though severe, "do[ ] not suggest that the particular (and distinct) punishment at issue – lifetime disarmament –is rooted in our Nation's history and tradition." *Range*, 69 F.4th at 105.

In sum, Defendant Cherry is included in "the people" protected by the Second Amendment. Because none of the historical laws offered by the Government impose a "comparable burden" on the Second Amendment right of convicted felons to keep and bear arms, the Court finds § 922(g)(1) unconstitutional, facially and as applied.

This Court is well aware of the gun violence epidemic in our community, district, and country at large, and the risks posed by allowing potentially dangerous individuals to be armed. That said, it is persuaded that adherence to the *Bruen* directive, that a proper historical analogue must be both comparably justified and impose a comparative burden, compels its conclusion.

### Conclusion

For the foregoing reasons, Defendant Bernard L. Cherry's Motion to Dismiss the Indictment (Doc. 21) is **GRANTED**. All other pending motions are **TERMINATED as MOOT** and pending hearings and proceedings set by the Court are **VACATED**.

**IT IS SO ORDERED.**

**DATED: February 1, 2024**

**STACI M. YANDLE**
**United States District Judge**

Page **10** of **10**

A10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause 3:23-cr-30112-SMY-1 |
| | ) | |
| BERNARD L. CHERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO DISMISS INDICTMENT

COMES NOW Defendant, Bernard L. Cherry, by and through counsel, and pursuant to Fed. R. of Cr. P. 12(B)(3) and moves to dismiss the Indictment charging him with two counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). (Doc. 1). Defendant contends section 922(g)(1), as applied to him, is unconstitutional in violation of the Second Amendment based on the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

**I.    Section 922(g)(1) is unconstitutional as applied to Mr. Cherry because the Second Amendment's text covers the conduct at issue and there is no historical tradition of permanently disarming felons like him.**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

In *Bruen*, the Supreme Court clarified the operative framework for assessing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

1

A11

regulation." 142 S. Ct. at 2129. "The government must affirmatively prove" the constitutionality of the firearm restriction by pointing to comparable historical firearms regulations. *Id.* at 2127.

A. **The Second Amendment's plain text covers the possession of firearms by Defendant.**

*Bruen* first requires that courts determine whether the text of the Second Amendment applies before the historical burden transfers to the Government. *See, e.g.*, *Range v. Att'y Gen.*, 69 F.4th 96, 101 (3d Cir. 2023) (en banc) (*citing Bruen*, 142 S. Ct. at 2134–35). In this case, the plain text of the Second Amendment applies to Mr. Cherry's purported possession of a firearm.

The Second Amendment's plain text covers the conduct proscribed by §922(g)(1) generally. The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Supreme Court has repeatedly held that "the people" protected under the Second Amendment includes "all Americans." *See Bruen*, 142 S. Ct. at 2156 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms"); *Heller*, 554 U.S. at 581 ("[T]he Second Amendment right is exercised individually and belongs to all Americans."); *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) ("'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments . . . refers to a class of persons who are part of a national community . . . ."); *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting) ("Neither felons nor the mentally ill are categorically excluded from our national community).

In addition, the term "'[k]eep arms' was simply a common way of referring to possessing arms.'" *Heller*, 554 U.S. at 583. Thus, the Second Amendment's plain text covers the possession of firearms by all Americans, including Mr. Cherry who is a natural born citizen of the United States. Accordingly, such conduct is presumptively lawful. 18 U.S.C. §922(g)(1) criminalizes this presumptively lawful conduct. This statutory provision makes it an offense for a person "who has

A12

been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year" to ever possess a firearm. As such, under *Bruen*, the Government must show that 18 U.S.C. §922(g)(1) is consistent with the United States' historical tradition of firearm regulation in order to be constitutional under the Second Amendment.

**B. The Government cannot demonstrate that § 922(g)(1) is consistent with the United States' historical tradition of firearm regulation as applied to Mr. Cherry.**

The Second Amendment applies to Mr. Cherry and thus *Bruen* instructs that "the Constitution presumptively protects that conduct" and the Government bears the burden of rebutting that presumption. 142 S. Ct. at 2126.

History does not support a permanent ban applying to all felons. Although people faced felony convictions when the Second Amendment was ratified in 1791, it is not enough to show §922(g)(1) addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. When laws address a "longstanding" problem like a general societal problem, the Supreme Court clarified that the historical inquiry is demanding: "the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is *inconsistent* with the Second Amendment." *Id.* at 2133; 2131 (emphasis added). If "the Founders themselves could have adopted" a particular regulation "to confront [the longstanding] problem" but did not do so, then the law today is unconstitutional. *Id.* at 2131.

18 U.S.C. §922(g)(1) addresses a longstanding societal problem—the permanent disarmament of all felons. Therefore, the lack of "distinctly similar" historical regulation presents two, independent reasons for concluding that the statute is unconstitutional as applied to Mr. Cherry. First, there is no historical tradition from the time of the founding of the United States of

3

<span style="color:red">A13</span>

*permanently* disarming felons. Second, there is no historical tradition from the time of the founding of the United States of disarming felons with a similar record to that of Mr. Cherry.

The Indictment does not allege a specific felony predicate that would trigger Mr. Cherry's prohibition on possession of a firearm under 18 U.S.C. §922(g)(1). (Doc. 1). Rather, the Indictment indicates that Mr. Cherry has knowingly previously been convicted of a crime for which the term of imprisonment exceeded one year. Mr. Cherry appears to have prior convictions for which the term of imprisonment exceeded one year (felonies) consisting of federal felon in possession of a weapon charge and State of Illinois felon in possession of a weapon charges and an acting with others Aggravated Robbery and Attempted Aggravated Vehicular Hijacking from when Mr. Cherry was 17 years old.  Mr. Cherry's prior felony convictions related to possession of a weapon or teenage robbery and attempted vehicular hijacking would not constitute the type of "historical tradition" that would automatically preclude him from possession a weapon as guaranteed by the Second Amendment to the United States Constitution. See i.e. *U.S. v. LeBlanc*, December 19, 2023 -- F.Supp.3d -- 2023 WL 8756694, wherein similarly the District Court for the Middle District Of Louisiana held that 18 U.S.C. §922(g) was unconstitutional as applied to Defendant Mr. LeBlanc despite Mr. LeBlanc having prior convictions for armed robbery.

Accordingly, the Government cannot meet its burden under *Bruen* to show that there were "distinctly similar" laws in the United States' history such that 18 U.S.C. §922(g)(1) would be constitutional as applied to Mr. Cherry as a citizen of the United States.

II.      **Conclusion**

Mr. Cherry respectfully requests the entry of an Order dismissing the Indictment because 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.

4

A14

A15

Respectfully submitted,


/s/ Kim C. Freter
KIM C. FRETER
Federal Public Defender
650 Missouri Avenue, Ste G10A
East St. Louis, IL 62201
Phone: 618-482-9050
Fax:    618-482-9057
kim_freter@fd.org


ATTORNEY FOR DEFENDANT